UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACKIE HARRIS,

                    Plaintiff,                    05-CV-6603T

          v.                                      **DECISION
                                                  and ORDER**

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

                    Defendant.

_____


                    INTRODUCTION

     Plaintiff Jackie Harris ("Harris" or "plaintiff"), proceeding pro se, brings this action pursuant to Title II of the Social Security Act, codified at 42 U.S.C. § 404 et seq., claiming that the Commissioner of Social Security ("Commissioner") improperly denied his application for disability benefits.  Specifically, Harris claims that the findings of the Administrative Law Judge ("ALJ") were not supported by substantial evidence in the record, and that the findings of the ALJ contradict substantial evidence in the record of plaintiff's disability.

     The Commissioner contends that the ALJ's findings were, in fact, supported by substantial evidence in the record and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

BACKGROUND

Plaintiff is a 56-year-old male who alleges disability due to depression, anger, a hernia and memory loss. (R. at 31-32, 56). Plaintiff claims that his conditions and illnesses first affected him in 1966. (R. at 56). However, he continued to work and was last regularly employed until February 2001. (R. at 57). Immediately before his disability, plaintiff worked as a carpenter beginning in September 1999. (R. at 57). Plaintiff claims that as of February 5, 2001, he has been unable to return to work because his mental condition worsened and he could not get along with people. (R. at 57). Prior to filing for social security and disability benefits he previously worked as a construction laborer, a delivery person for an auto parts store, and as a carpenter. (R. at 14, 57-66).

The record indicates that Harris saw his primary care physician, Dr. Virinchi Bala at the Wilson Health Center in November 2002 and was scheduled to see him again in December 2002 on an as needed basis. (R. at 58). He also sought treatment from Dr. Kuranda at Lifetime Health due to his hernia problems. (R. at 59). However, plaintiff has not provided any medical records from any of his treating physicians. Plaintiff was also examined on four occasions in 2000 and 2001 by medical staff at

Prison Health Services.[1] (R. at 90-104).  On October 19, 1999, plaintiff was admitted to Prison Health Services for an unspecified mental health complaint.  Harris was examined by a physician assistant who did not find any abnormalities. (R. at 104).

Plaintiff was next seen on September 14, 2000 by a physician assistant and in the inmate questionnaire form, plaintiff reported having been treated for high blood pressure and not for any mental health problems. (R. at 102).  He also denied having been hospitalized by a physician or psychiatrist within the last year. (R. at 102).  On April 7, 2001 and April 9, 2001, plaintiff was seen by a nurse for reassessment.  (R. at 94-99).  The April 7, 2001 intake screening indicated that plaintiff appeared alert and oriented with no signs of pain or other symptoms suggesting the need for medical care.  (R. at 95).  Also, plaintiff denied taking medications or having recently been hospitalized or seen by a doctor for any illness. (R. at 96).  Further, plaintiff denied having any mental health problems or treatment. (R. at 97).

The assessment summary dated April 9, 2001 states that Harris showed no signs that suggested risk of suicide, assault, or abnormal behavior. (R. at 94).  On a routine referral for mental health examination dated April 26, 2001, based on plaintiff's

_____

[1]Plaintiff was confined at the N.Y. State Correctional Facility in Wyoming County for approximately 10 years stemming from charges of assaulting his wife on July 11, 1988 for inflicting serious bodily harm upon her.

complaints of elevated stress and insomnia, plaintiff was diagnosed with hypertension and given hypertensive medication. (R. at 90-91).

## PROCEDURAL HISTORY

On November 20, 2002, plaintiff applied for Disability Insurance Benefits and Supplemental Security benefits for the disability he alleges prevented him from returning to work on February 5, 2001. (R. at 31-32). His application was denied by notice dated March 12, 2003.  Plaintiff then requested a hearing, which was held on March 18, 2004.  On April 27, 2004, the ALJ issued a decision denying plaintiff's claim for disability benefits. (R. at 13-22).

The ALJ found that while plaintiff's borderline personality disorder and possible history of alcohol abuse were severe, they did not meet the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-15).  With regard to Harris' residual functional capacity ("RFC"), the ALJ found that plaintiff is "moderately" limited in his ability to "understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; ... [and] interact appropriately with the general public[.]"  However, the ALJ found that plaintiff is able to "understand and follow simple directions; maintain attention and concentration for simple, rote tasks; interact and relate with others in low-contact settings; and make

4

decisions and adapt to changes." (R. at 21).  Further, he found no exertional limitations. (R. at 22).

The ALJ next considered whether plaintiff could perform past work or any other work existing in the national economy. (R. 21). The ALJ found that Harris could perform his past work as a delivery person, thus rendering him not disabled and ineligible for benefits. (R. at 13-22).  Thereafter, plaintiff requested that the Appeals Council review the ALJ's decision. (R. at 6). The Appeals Council declined reconsideration on September 17, 2005. (R. at 3-9) Having exhausted all his administrative remedies, Harris commenced this action on November 10, 2005. (Docket No. 1).

The Commissioner subsequently moved for judgment on the pleadings.  Plaintiff, however, has not submitted any opposition to the Commissioner's motion.  In addition, plaintiff did not appear for oral argument, which was scheduled before the Court on July 12, 2006.   Therefore, the Court deemed the motion submitted for determination.

<u>LEGAL STANDARD</u>

A.   <u>Jurisdiction and Scope of Review</u>.

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by

substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). See also Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim. Finally, the court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted).

B.   Defendant's Motion for Judgment on the Pleadings

The Commissioner argues that the ALJ's finding that plaintiff is not disabled is supported by substantial evidence in the record. Accordingly, the Commissioner moves for judgment on the pleadings

upholding her determination and dismissing the plaintiff's complaint.

C.    The Social Security Regulations

In determining disability, the Commissioner instructs adjudicators to follow a five-step sequence as stated at 20 C.F.R. § 404.1520:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be disabled regardless of medical findings;

2.    An individual who does not have a "severe" impairment will not be found to be disabled;

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 of Subpart P of Regulations No. 4 (the "Listings"), a finding of disabled will be made without consideration of vocational factors;

4.    If an individual is capable of performing work he or she has done in the past, a finding of not disabled must be made;

5.    If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520 (2002).

The plaintiff bears the burden of establishing a prima facie case of disability. Plaintiff must show that he has not engaged in any substantial gainful activity and that the impairment is severe and prohibits him from returning to the type of work in which he

7

was formerly engaged.   See Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).  Once plaintiff has set forth his case, "the burden shifts to the [Commissioner] to produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform considering not only his physical capability, but his age, his education, his experience and his training."  Id (citations and footnote omitted).

## DISCUSSION

Harris alleges that he is entitled to disability benefits for the period from February 5, 2001 to present because he suffers from depression, anger, a hernia and memory loss, which prevents him from maintaining gainful employment.  At his hearing before the ALJ, Harris testified that he was unable to work because of his behavioral patterns, difficulty interacting with co-workers, and mentally and physically antagonizing co-workers.  (R. at 143-146). He also complained that he was unable to concentrate on any job and that he could not organize things while working. (R. at 147-148).

Harris testified that his family lives in Rochester but they do not visit him because of his mental condition.  (R. at 149). The last time he saw any of his brothers or sisters was in 1992 while he was incarcerated at a correctional facility when they visited him to inform him that his mother passed away.  (R. at 150).  Plaintiff testified that he does not go out to restaurants

8

or ball games because he fears that if he is in a crowd of people that one of his "spells might come on and [he] might hurt someone[.]" (R. at 150-151).

Harris argues that it is improper to find that his condition does not meet and/or equal Listing 12.08 based upon the limitations mentioned in the residual functional capacity assessment. To meet the requirements for borderline personality disorder under Listing 12.08, plaintiff must show that he had at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration. As the ALJ found, Harris did not meet any of these requirements because he had no marked difficulties in any area of functioning and had no repeated episodes of decompensation, each of which were of extended duration. (R. at 15-16).

Dr. Melvin Zax, a psychologist who examined plaintiff, found that he was only somewhat impaired in his attention and concentration. In addition, the State agency physician Dr. Sadiqur Rahman evaluated his records and concluded that plaintiff had no episodes of decompensation of extended duration, but merely mild restriction in activities of daily living, and only moderate limitations in maintaining social functioning and concentration, persistence and pace.  (R. at 129).

9

In his decision dated April 27, 2004, the ALJ found that Harris had no exertional limitations that rendered him disabled within the meaning of the Act. (R. at 22).  Dr. Ramon Medalle, an internist, performed a consultative examination of Harris on January 17, 2003.  (R. at 106-109).  At the examination, plaintiff reported that he had no difficulty sitting, standing, or walking, but could only carry about seventy pounds and climb one to two flights of stairs.  (R. at 107).  Accordingly, Dr. Medalle's physical examination of plaintiff revealed fully normal findings. (R. at 107-109).  The opinion of Dr. Ramon Medalle and the treatment notes from Prison Health Services support the ALJ's decision.  For instance, Dr. Medalle concluded that Harris had no physical limitations. (R. at 109).  Reports from Prison Health Services revealed that Harris received medical treatment only for his hypertension.  (R. at 90-104).

Harris further argues that the ALJ improperly determined that he was not credible based upon his observations of the plaintiff at the hearing.  Moreover, plaintiff's ability to perform a range of daily activities contradicts his claims of disability.  Plaintiff testified that he is able to care for his personal needs unassisted, including showering, dressing, preparing meals, feeding himself, and shopping for food and clothing. (R. at 72-73, 75, 107).  He also travels  unaccompanied on a daily basis, has a driver's license, and drives his car, rides a bicycle, and is able

to walk. (R. at 74).  In addition, while plaintiff alleged that his mental impairment prevented him from working, that claim was unsupported by any medical or psychological testimony or proof offered on his behalf.

Lastly, plaintiff's argument that the vocational expert, Peter Manzi, testified that there would be no work which exists in the national economy that the plaintiff could perform is unsupported by the record.  The ALJ may rely upon a vocational expert's testimony as to the existence of jobs which the plaintiff can perform.  <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553-54 (2d Cir. 1983).  Given a hypothetical man of plaintiff's age, education, work history, and RFC, Mr. Manzi stated that there are jobs in the national economy that such an individual could perform. (R. at 158-161). Specifically, an individual fitting plaintiff's profile could perform the unskilled work of his past job as a delivery person. (R. at 159).  He further testified that other examples of jobs that fulfill these requirements include hand packager, furniture cleaner, cafeteria attendant and assembler. (R. at 160-161).

Taking into account all of the medical evidence, the ALJ correctly determined that Harris is capable of performing work with some restrictions and is not totally disabled under the Act.

<u>CONCLUSION</u>

After thorough review of the record, I find that substantial evidence supports the ALJ's finding that plaintiff possessed the

11

residual functioning capacity to perform work that exists in the national economy and thus was not eligible to receive disability benefits.  Accordingly, the Commissioner's motion for judgment on the pleadings is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 25, 2006